# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| KINSALE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> MMG MANAGEMENT, LLC, SHENISHA MOORE, as Parent of D.B., a minor, and BETTY LESTER, as Administrator of the ESTATE OF DEMARIOUS BROWN, <br><br> Defendants. | Civil Action No.: <br> 1:25-cv-03949-SDG |

## KINSALE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Kinsale Insurance Company ("Kinsale"), pursuant to Fed. R. Civ. P. 56 and Local Rules 56,1 and 7.1, files this Motion for Summary Judgment. For the reasons below, Kinsale respectfully requests that the Court grant summary judgment in favor of all counts of Kinsale's Complaint (Dkt. No. 1) and against all counts of the Amended Counterclaim (Dkt. No. 24) filed by Defendant MMG Management, LLC ("MMG").

This Motion is supported by: (1) Kinsale's separate Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment ("SMF"), record

1

evidence cited therein, and exhibits attached thereto; and (2) all pleadings and other filings in this case, including all attachments thereto.

## I. INTRODUCTION

This is an insurance coverage dispute arising out of an underlying lawsuit filed against Lotus Lake Group, LLC ("Lotus Lake") and MMG Management LLC ("MMG") by Shenisha Moore and Betty Lester the ("*Moore* suit"). That underlying suit involves a July 13, 2024, shooting at an apartment complex owned by Lotus Lake and managed by MMG, in which Ms. Moore's son, Demarious Brown, was killed.

Kinsale issued two insurance policies to Lotus Lake that were in effect at the time of the shooting: a primary general liability policy and an excess liability policy. Both policies include an assault-and-battery exclusion; the excess policy also includes a firearm exclusion. Lotus Lake and MMG both sought coverage under the Policies; despite those coverage issues, Kinsale (1) agreed to defend both companies under a reservation of rights and (2) ultimately agreed to settle the claims against Lotus Lake, exhausting the limits of both policies. Kinsale then advised MMG of that settlement. Since then, Kinsale has continued to defend MMG under its reservation of rights.

MMG protested Kinsale's settlement of the claim against Lotus Lake, prompting Kinsale to file this suit seeking a declaration that it owes no duty to

defend or indemnify MMG in connection with the *Moore* suit. Despite Kinsale's ongoing defense of MMG, MMG counterclaimed for breach of contract and "common law bad faith." Because the Policies do not provide coverage, and because MMG otherwise cannot support a viable bad-faith claim under Georgia law, Kinsale is entitled to summary judgment in its favor and against MMG's counterclaims.

## II.   FACTUAL BACKGROUND

### A.   The Underlying Shooting and *Moore* Suit

On July 13, 2024, Demarious Brown was shot and killed (the "Shooting") at the Grey Parc of Macon Apartments (the "Property"). (SMF ¶ 8.) At the time of the Shooting, Lotus Lake owned the Property, and MMG managed it. (SMF ¶ 8.)

On December 20, 2024, Ms. Moore (Mr. Brown's mother) and Ms. Lester (the administrator of his estate) filed suit against Lotus Lake and MMG. (SMF ¶ 8.) They alleged Mr. Brown was intentionally shot on the Property by an unknown intruder. (SMF ¶ 8.) And they alleged Lotus Lake and MMG were liable for negligently allowing the intruder to enter the Property and commit the Shooting. (SMF ¶ 8.) Based on that purported misconduct, Ms. Moore and Ms. Lester asserted counts against Lotus Lake and MMG for negligent security; nuisance; and negligent hiring, training, entrustment, supervision, and retention. (SMF ¶ 8.)

B.     **The Insurance Policies**

Kinsale issued Policy No. 0100269194-0 to Lotus Lake, which provided certain general liability coverage for the policy period of November 12, 2023, to November 12, 2024 (the "Primary Policy"). (SMF ¶ 1.) The Primary Policy provides coverage subject to a $1 million each-occurrence limit. (SMF ¶ 1.) The Primary Policy's insuring agreement provides, in pertinent part, that Kinsale's "right and duty to defend ends when [Kinsale] have used the applicable limit of insurance in the payment of judgments or settlements." (SMF ¶ 2.) The Primary Policy includes an assault-and-battery exclusion, which in relevant part bars coverage for:

> 'suit' for 'bodily injury' [ ] arising out of, related to, or,
> in any way involving any actual or alleged assault,
> battery[].

(SMF ¶ 3.)

Kinsale also issued Policy No. 0100255487-0 to Lotus Lake, which provided certain excess liability coverage for the policy period of August 23, 2023, to July 11, 2024 (the "Excess Policy"). (SMF ¶ 4.) The Excess Policy provides coverage subject to a $2 million each-occurrence limit. (SMF ¶ 4.) Like the Primary Policy, the Excess Policy provides that Kinsale's duty to defend ends upon the exhaustion of the applicable limit. (SMF ¶ 5.) The Excess Policy follows and incorporates the terms of the Primary Policy, including the Primary Policy's assault-and-battery

4

exclusion. (SMF ¶ 4.) It also includes its own, similar, assault-and-battery exclusion, as well as a firearms exclusion that provides in relevant part:

> 'suit' for 'bodily injury' [ ] arising out of, related to, or, in any way involving any actual or alleged assault, battery, [].

(SMF ¶¶ 6-7.)

### C. Kinsale's Reservations of Rights and Settlement

On October 25, 2024 (after Kinsale was notified of the Shooting but before the *Moore* suit was filed) Kinsale issued a reservation of rights letter to Lotus Lake and to MMG on October 25, 2024. (SMF ¶ 9.) After the *Moore* suit was filed, Kinsale sent a second reservation of rights letter to MMG, dated February 7, 2025. (SMF ¶ 10.) Kinsale began defending MMG against the *Moore* suit under those reservations of rights. (SMF ¶ 10.)

By letter dated April 9, 2025, Ms. Moore and Ms. Lester sent a time-limited demand to Lotus Lake demanding $3,000,000—i.e., the combined limits of the Primary Policy and Excess Policy (collectively, the "Policies")—in exchange for a limited liability release of Lotus Lake. (SMF ¶ 11.) On May 9, 2025, Kinsale accepted the Demand. (SMF ¶ 12.) On July 7, 2025, Kinsale notified MMG that the limits of the Policies were exhausted in further of a settlement and that Kinsale would provide MMG's other carriers 30 days from the finalization of the settlement to pick up MMG's defense. (SMF ¶ 13.) In response, on July 15, 2025,

MMG threatened suit against Kinsale in a phone call to undersigned counsel. (SMF ¶ 14.)

### D. The Claim for Declaratory Relief and Counterclaim

On July 16, 2025, Kinsale filed this declaratory judgment action. (*See* Dkt. No. 1). This Declaratory Judgment Action seeks an order from this Court that Kinsale owes no duty to defend or indemnify MMG in the *Moore* suit. (*See* Dkt. No. 1). On October 3, 2025, MMG amended its answer to include a two-count counterclaim alleging that Kinsale acted in "bad faith" by settling the claims against Lotus and that such settlement breached the Policies. (*See* Dkt. No. 15). MMG's counterclaim is predicated on its mistaken belief that the Policies obligated Kinsale to defend and indemnify MMG in the *Moore* suit. (*See* Dkt. No. 15).

## III. LEGAL STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. A movant is entitled to judgment as a matter of law when he can fulfill his burden of proof by "show[ing] that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Summary judgment is appropriate in declaratory actions seeking a ruling as to the application of an insurance policy to a particular lawsuit, where the construction and effect of the application is a matter of law. *Sinni v. Scottsdale Ins. Co.*, 676 F. Supp 2d 1319, 1323 (2009). An insurance company's motion for summary judgment should be granted when an insurance policy's exclusion precludes a duty to defend or indemnify under the Policy. *See Allstate Prop. & Cas. Ins. Co. v. Haslup*, 502 F. App'x 845, 848 (11th Cir. 2012) (affirming summary judgment in favor of the insurer and finding no duty to defend or indemnify existed when exclusion applied to bar coverage). "If there is no duty to defend, there is no duty to indemnify." *Nat'l Cas. Co. v. Pickens*, 582 F. App'x 839, 841 (11th Cir. 2014).

## IV.   ARGUMENT AND CITATION TO AUTHORITY

Kinsale owes no duty to defend or indemnify MMG for several reasons. Given that, summary judgment in favor of Kinsale's counts for declaratory relief and against MMG's counterclaims is appropriate.

"[W]hether an insurer has a duty to defend depends on the language of the policy as compared with the allegations of the complaint." *HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662, 666 (11th Cir. 2012). The "allegations of the complaint are looked to to determine whether a liability covered by the policy is asserted." *Id.* (quotation and emphasis omitted). "If there is no duty to

7

defend, there is no duty to indemnify." *Nat'l Cas. Co. v. Pickens*, 582 F. App'x 839, 841 (11th Cir. 2014). For two separate and independent reasons, Kinsale has no duty to defend or indemnify MMG here.

*First*, multiple exclusions bar coverage for MMG in connection with the Shooting and the *Moore* suit. Both Policies contain exclusions for claims arising out of assault or battery, and it is undisputed the *Moore* suit is a claim that arises out of assault or battery. Similarly, the Excess Policy contains an exclusion for claims arising out of the use of a firearm, and it likewise is undisputed the *Moore* suit arises out of the alleged use of a firearm. Those exclusions preclude any duty to defend or indemnity MMG under either Policy, regardless of any other issue.

*Second*, and separately, Kinsale has exhausted the limits of both Policies by paying to settle the claims against its named insured Lotus Lake notwithstanding those coverage issues. Georgia law is well-settled that a liability insurer faced with multiple claims may choose to settle certain claims instead of others, and Kinsale's decision to settle on behalf of Lotus Lake (and thereby exhaust its policy limits) terminates any obligation it may have otherwise owed to MMG.

Each of these issues precludes any duty to defend or indemnify MMG, which warrants summary judgment for Kinsale and against MMG's counterclaim for breach of contract. And, because there can be no bad faith if there is no coverage, summary judgment also is warranted against MMG's counterclaim for

bad faith. *See Wedde v. Ctr. Mut. Ins. Co.*, 2025 WL 3088901, at *12 (N.D. Ga. Sept. 22, 2025).

Finally, setting aside those coverage defenses, the Court should enter summary judgment against MMG's counterclaim for bad faith because it simply fails to state a claim under Georgia law. There are two types of insurer bad faith in Georgia: (1) a statutory claim under O.C.G.A. § 33-4-6; and (2) a common law claim for bad-faith failure to settle. MMG does not allege the former, nor does it allege any of the prerequisites to such a claim (such as a proper pre-suit demand). *See BayRock Mortg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19 (2007). MMG also does not allege an actual judgment or binding settlement against it in excess of policy limits, which is an absolute prerequisite to a failure-to-settle claim under Georgia law. *United Restoration & Pres., Inc. v. Maxum Indem. Co.*, 2018 WL 1936530, at *5 (N.D. Ga. Jan. 16, 2018). As a result, MMG's counterclaim for bad faith fails without even reaching the question of coverage under the Policies.

As a result, Kinsale is entitled to summary judgment in its favor and against MMG.

### A. The Policies contain multiple exclusions barring coverage for MMG.

The Policies contain several exclusions that bar coverage for MMG here.

#### 1. The Policies' assault-and-battery exclusions bar coverage.

First and foremost, both Policies exclude coverage for injuries:

9

>arising out of, related to, or, in any way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked.

(SMF ¶¶ 3, 6.)

Those exclusions bar coverage. The *Moore* suit seeks to hold MMG liable for negligence and nuisance based on a third party's intentional shooting of Mr. Brown. That intentional shooting is an "actual or alleged assault, battery, harmful or offensive contact;"[1] Georgia law is clear the claims against MMG arise out of that conduct. *See, e.g., First Specialty Ins. Corp. v. Flowers*, 284 Ga. App. 543, 545 (2007); *Cont'l Cas. Co. v. H.S.I. Fin. Servs., Inc.*, 266 Ga. 260, 262 (1996); *Jefferson Ins. Co. of N.Y. v. Dunn*, 269 Ga. 213, 215 (1998); *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 372-73 (2004); *Eady v. Capitol Indem. Corp.*, 232 Ga. App. 711, 713-14 (1998). A claim "arises out of" assault, battery, or other excluded conduct when that claim would not exist "but for" the assault or battery. *See Dunn*, 269 Ga. at 215; *Pilz*, 267 Ga. App. at 372-73.

The claims against MMG in the *Moore* suit would not exist but for the Shooting. As the Georgia Court of Appeals has explained:

>Notwithstanding tort liability theories, the underlying facts and circumstances of the claims asserted determine whether or not a policy exclusion applies, because the exclusionary clause is focused solely upon

---

[1] Setting aside the exclusions' broad reference to "harmful or offensive conduct," there is no question that the Shooting constitutes assault and/or battery under Georgia law. *See* O.C.G.A. §§ 16-5-21, 16-5-23.1.

10

> the genesis of the underlying plaintiff's claims—if those claims arose out of the excluded acts[,] then coverage need not be provided.

*Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 114 (2012). Given that, Georgia courts have repeatedly held that claims against the owner or manager of property for negligently failing to prevent third-party criminal attacks arise out of assault or battery. *See, e.g., id.; Eady*, 232 Ga. App. at 712. The same goes for claims of negligent hiring, supervision, retention, and the like. *See, e.g., Dunn*, 269 Ga. at 215. And the same is true for the underlying claim against MMG for creating a nuisance. *Capitol Specialty Ins. Corp. v. PTAV, Inc.*, 331 F. Supp. 3d 1329, 1335 (N.D. Ga. 2018).

Given this clear Georgia law, this Court has repeatedly held that similar assault-and-battery exclusions bar coverage for claims against a property owner or manager arising out of third-party criminal attacks. *See, e.g., Colony Ins. Co. v. Henry Props., Inc.*, No. 1:21-CV-4600-TWT, 2022 WL 2668377, at *3 (N.D. Ga. July 11, 2022); *Nautilus Ins. Co. v. EJIII Dev. Co.*, No. 1:17-CV-2048-TCB, 2018 WL 3524639, at *3 (N.D. Ga. July 19, 2018); *Gen. Star Indem. Co. v. Jones*, No. 1:22-CV-4662-MHC, 2024 WL 4524126, at *4 (N.D. Ga. Mar. 26, 2024).

This case is no different. The *Moore* suit alleges Mr. Brown was intentionally shot by an unknown third-party assailant. (*See* SMF ¶ 8.) All of the claims against MMG in the *Moore* suit are predicated on MMG's failure to prevent that shooting

11

from happening; in other words, Mr. Brown being shot is the basis for all of the damages his estate seeks to recover in the *Moore* suit. (SMF ¶ 8.) As a result, the Policies' assault-and-battery exclusions bar coverage, and Kinsale is entitled to summary judgment on its claims and against MMG's counterclaims.

### 2. The Excess Policy's firearms exclusion bars coverage.

Separately, the Excess Policy's Absolute Firearm Exclusion bars any coverage under that Policy. That exclusion precludes coverage for "any suit arising directly out of, related to, or in any way involving the use of a firearm." (SMF ¶ 7.) That exclusion bars coverage here the same way the assault-and-battery exclusions do: the *Moore* suit (and all of the claims against MMG) expressly arises out of the alleged use of a firearm. (SMF ¶ 8.)

As a result, courts applying Georgia law have routinely enforced similar exclusions, just as they have assault-and-battery exclusions. *See, e.g.*, *Henry Properties*, 2022 WL 2668377, at *3; *Hudson Specialty Ins. Co. v. Snappy Slappy LLC*, No. 5:28-cv-00104, 2019 WL 1938801, *3 (M.D. Ga. May 1, 2019); *Great Lakes Insurance SE v. Habif Prop. LLC*, No. 5:20-cv-343, 2021 WL 2417156, *5 and n.6 (N.D. Ga. June 14, 2021).

Accordingly, Kinsale is entitled to summary judgment, and this Court should enter an order declaring that Kinsale does not owe MMG a duty to defend or indemnify them against the *Moore* suit under the Excess Policy.

## B. Kinsale owes no duty to defend MMG in the *Moore* suit because the limits of both Policies have been exhausted.

Even if the exclusions above did not bar coverage, any duty to defend MMG that Kinsale would owe was extinguished upon the exhaustion of the Policies' limits of liability notwithstanding those coverage defenses. Under Georgia law and the Policies' plain language, Kinsale's coverage obligations end once Kinsale has exhausted its limits through settlement. *See Travelers Prop. Cas. Co. of Am. v. Cont'l Cas. Co.*, 226 F. Supp. 3d 1359, 1373 (N.D. Ga. 2017); *Gibson v. Preferred Risk Mut. Ins. Co.*, 216 Ga. App. 871, 873 (1985); *Four Season Trucking Inc. v. Grange Mut. Cas. Co.*, No. 23-12013, 2024 WL 1635692, at *3 (11th Cir. Apr. 16, 2024). It is undisputed that Kinsale agreed to settle the *Moore* suit claims against Lotus Lake, Kinsale's named insured, in exchange for the combined Policy limits of $3 million. (*See* Dkt. No. 24 ¶ 45.)

MMG may not *like* Kinsale's decision to exhaust its limits by agreeing to settle on behalf of its named insured, but MMG has no legal basis to contest that decision. Georgia law gives liability insurers broad latitude to settle claims on behalf of their insureds and, faced with multiple competing claims, to pick and choose which claims to settle, even if such settlement exhausts the available limits of insurance and consequently exposes an insured to additional claims. *Allstate Ins. Co. v. Evans*, 200 Ga. App. 713, 714–715 (1991); *Miller v. Ga. Interlocal Risk Mgmt. Agency*, 232 Ga. App. 231, 231 (1998); *Walston v. Holloway*, 203 Ga. App. 56, 56

13

(1992); *Allied Property & Cas. Ins. Co. v. Bed Bath & Beyond, Inc.*, No. 1:12-CV-1265-RWS, 2014 WL 1292456, at *9 (N.D. Ga. Mar. 31, 2014). In other words, Georgia law expressly authorizes Kinsale to do exactly what it did here: settle a claim on behalf of one insured while leaving another claim pending. That settlement terminates any obligation Kinsale may have otherwise owed MMG.

For this reason too, Kinsale is entitled to summary judgment in favor of its claims and against MMG's counterclaims.

### C.   MMG's counterclaim for bad faith fails on its own merits.

Kinsale owes MMG no coverage under the Policies for each of the reasons above, so it also cannot be liable for bad faith. *See Wedde v. Ctr. Mut. Ins. Co.*, No. 1:24−CV-3392-SEG, 2025 WL 3088901, at *12 (N.D. Ga. Sept. 22, 2025). But, even if this claim somehow were covered, Kinsale still would be entitled to summary judgment against MMG's counterclaim for bad faith because that counterclaim is meritless regardless of coverage.

MMG's second counterclaim asserts a count for "common law bad faith," and it outlines a long list of grievances MMG has regarding Kinsale's decision to settle on behalf of Lotus. (Dkt. No. 24 ¶¶ 32-64.) None of those grievances, however, amounts to a cognizable claim for bad faith under Georgia law.

Georgia law recognizes two types of "bad faith" claims against insurers. The first is the statutory cause of action under O.C.G.A. § 33-4-6, which is generally

14

"the exclusive remedy for an insurer's bad faith refusal to pay insurance proceeds." *Thompson v. Homesite Ins. Co. of GA*, 345 Ga. App. 183, 188 (2018). MMG does not appear to assert this type of bad-faith claim: MMG never references § 33-4-6 in its Counterclaim, nor does MMG allege the prerequisites necessary for such a claim—i.e., a proper pre-suit demand made sixty days before suit and demanding an amount "immediately due" under the Policy. *BayRock Mortg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19 (2007). MMG did not make such demand, does not allege that it made such a demand, and *could not* have made such a demand, as no amounts are "immediately due" to MMG as a result "of a loss covered by a policy of insurance." As a result, even if MMG were asserting a claim under § 33-4-6, that claim would be subject to summary judgment.

The other type of bad-faith claim recognized by Georgia courts is one for bad-faith failure to settle a third-party claim against the insured. *See S. Gen. Ins. Co. v. Holt*, 262 Ga. 267, 268-69 (1992). Again, setting aside that the Policies *do not provide* coverage for the *Moore* suit, it is axiomatic that a failure-to-settle claim requires a subsequent award against an insured in excess of limits. *See United Restoration & Pres., Inc. v. Maxum Indem. Co.*, 2018 WL 193650, at *5 (N.D. Ga. Jan 16, 2018) (citing *Trinity Outdoor, LLC v. Central Mut. Ins. Co.*, 285 Ga. 583, 583 (2009)). In other words, if there is no excess judgment or binding settlement, there

15

can be no bad-faith failure-to-settle claim. *Game Truck Georgia, LLC v. Atl. Specialty Ins. Co.*, 849 F. App'x 233, 237 (11th Cir. 2021); *Trinity Outdoor*, 285 Ga. at 587.

MMG's other complaints—e.g., that Kinsale did not properly communicate with MMG's other insurers about the settlement, or that Kinsale "created defense instability" by filing this declaratory judgment action—simply do not support a bad-faith claim under Georgia law. MMG's exact theory of recovery for those grievances is unclear, though the counterclaim flirts with the idea of a breach of the duty of good faith and fair dealing. (*See* Dkt. No. 24 ¶ 61.) But there is no independent cause of action under Georgia law for breach of the contractual covenant of good faith and fair dealing, nor does a supposed breach of that covenant otherwise support a separate bad-faith or other extracontractual claim. *Alan's of Atlanta v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990); *XL Ins. Am., Inc. v. Sto Corp.*, 2008 WL 11407266, at *6 (N.D. Ga. Feb. 25, 2008).

With all that in mind (and even ignoring the coverage issues discussed above), MMG cannot support a bad-faith claim under Georgia law without (1) a valid pre-suit demand under O.C.G.A. § 33-4-6 or (2) a judgment or binding settlement in excess of limits. MMG has not alleged, and cannot show, that either exists. As a result, Kinsale is entitled to summary judgment against MMG's counterclaim for bad faith.

## IV. CONCLUSION

The Court should grant summary judgment in favor of Kinsale's complaint and against MMG's counterclaims, because (1) Policies do not provide MMG coverage for the reasons outlined above and (2) MMG's counterclaim for bad faith fails even irrespective of those coverage issues.

Accordingly, Kinsale respectfully requests this Court grant its motion for summary judgment, declare Kinsale has no duty to defend or indemnify MMG against the *Moore* suit, and dismiss MMG's counterclaim.

Respectfully submitted this 12th day of January, 2026.

| | |
|---|---|
| **FIELDS HOWELL LLP**<br>665 8th Street NW<br>Atlanta, GA 30318<br>(404) 214-1250 (Telephone)<br>(404) 214-1251 (Fax)<br>bgossett@fieldshowell.com<br>jbauer@fieldshowell.com<br>wkeegan@fieldshowell.com | */s/ Brandon R. Gossett*<br>Brandon R. Gossett<br>Georgia Bar No. 120424<br>James M. Bauer<br>Georgia Bar No. 460185<br>William J. Keegan<br>Georgia Bar No.: 278159<br><br>*Counsel for Plaintiff Kinsale Insurance Company* |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KINSALE INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MMG MANAGEMENT, LLC, )<br>SHENISHA MOORE, as Parent of )<br>D.B., a minor, and BETTY LESTER, as )<br>Administrator of the ESTATE OF )<br>DEMARIOUS BROWN, )<br>)<br>Defendants. ) | Civil Action No.:<br>1:25-cv-03949-SDG |

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that the foregoing document has been prepared with a font and point selection (Book Antiqua, 13 point) that is approved by the Court as indicated in Local Rule 5.1(C) and 7.1(D).

Respectfully submitted this 12th day of January, 2026.

**FIELDS HOWELL LLP**
665 8th Street NW
Atlanta, GA 30318
(404) 214-1250 (Telephone)
(404) 214-1251 (Fax)
bgossett@fieldshowell.com
jbauer@fieldshowell.com
wkeegan@fieldshowell.com

/s/ Brandon R. Gossett
Brandon R. Gossett
Georgia Bar No. 120424
James M. Bauer
Georgia Bar No. 460185
William J. Keegan
Georgia Bar No.: 278159

*Counsel for Plaintiff Kinsale Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record via CM/ECF and via email.

Respectfully submitted this 12th day of January, 2026.

| | |
|---|---|
| **FIELDS HOWELL LLP**<br>665 8th Street NW<br>Atlanta, GA 30318<br>(404) 214-1250 (Telephone)<br>(404) 214-1251 (Fax)<br>bgossett@fieldshowell.com<br>jbauer@fieldshowell.com<br>wkeegan@fieldshowell.com | */s/ Brandon R. Gossett*<br>Brandon R. Gossett<br>Georgia Bar No. 120424<br>James M. Bauer<br>Georgia Bar No. 460185<br>William J. Keegan<br>Georgia Bar No.: 278159<br><br>*Counsel for Plaintiff Kinsale Insurance Company* |