**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| KINSALE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>MMG MANAGEMENT, LLC, SHENISHA MOORE, as Parent of D.B., a minor, and BETTY LESTER, as Administrator of the ESTATE OF DEMARIOUS BROWN,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No.:<br>1:25-cv-03949-SDG |

**KINSALE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON
THE PLEADINGS AND BRIEF IN SUPPORT**

Kinsale Insurance Company ("Kinsale"), pursuant to Fed. R. Civ. P. 12(c)

and the Court's April 8, 2026 order (Dkt. No. 44), files this Motion for Judgment

on the Pleadings. In support of this Motion, Kinsale states as follows:

**I.    INTRODUCTION**

Both Kinsale's Complaint (Dkt. No. 1) and MMG's Amended

Counterclaim (Dkt. No. 15) are ripe for resolution under Rule 12(c). Kinsale seeks

a declaratory judgment that two insurance policies it issued do not provide

coverage to MMG in connection with an underlying lawsuit filed against MMG

and Lotus Lake Group, LLC ("Lotus Lake") by Shenisha Moore and Betty Lester

1

(the "*Moore* suit"). In that lawsuit, Ms. Moore and Ms. Lester allege MMG and Lotus Lake in the *Moore* suit are liable for a July 13, 2024, shooting at an apartment complex (which was owned by Lotus Lake and managed by MMG), in which Ms. Moore's son, Demarious Brown, was killed.

Kinsale issued two insurance policies to Lotus Lake that were in effect at the time of the shooting: a primary general liability policy and an excess liability policy. Both policies include an assault-and-battery exclusion; the excess policy also includes a firearm exclusion. Lotus Lake and MMG both sought coverage under the Policies; despite those coverage issues, Kinsale (1) agreed to defend both companies under a reservation of rights and (2) ultimately agreed to settle the claims against Lotus Lake, exhausting the limits of both policies. Kinsale then advised MMG of that settlement. Since then, Kinsale has continued to defend MMG under a reservation of rights.

MMG protested Kinsale's settlement of the claim against Lotus Lake, prompting Kinsale to file this suit seeking a declaration that it owes no duty to defend or indemnify MMG in connection with the *Moore* suit. Despite Kinsale's ongoing defense of MMG, MMG counterclaimed for breach of contract and "common law bad faith." Because the Policies do not provide coverage, and because MMG otherwise cannot support a viable bad-faith claim under Georgia

2

law, Kinsale is entitled to judgment on the pleadings on both its request for declaratory judgment and on MMG's counterclaim.

## II.    FACTUAL BACKGROUND

### A.    The Underlying Shooting and *Moore* Suit

On July 13, 2024, Demarious Brown was shot and killed (the "Shooting") at the Grey Parc of Macon Apartments (the "Property"). (Compl. Ex. A ¶¶ 19-23, Dkt No. 1-1.[1]) At the time of the Shooting, MMG managed the Property. (MMG's Answer ¶ 17, Dkt. No. 15.)

On December 20, 2024, Ms. Moore (Mr. Brown's mother) and Ms. Lester (the administrator of his estate) filed suit against Lotus Lake and MMG. (*See generally* Compl. Ex. A.) They alleged Mr. Brown was intentionally shot on the Property by an unknown intruder. (Compl. Ex. A ¶¶ 19-23.) They also alleged Lotus Lake and MMG were liable for negligently allowing the intruder to enter the Property and commit the Shooting. (Compl. Ex. A ¶ 41.) Based on that purported misconduct, Ms. Moore and Ms. Lester asserted counts against Lotus

---

[1] Exhibit "A" to Kinsale's Complaint is a copy of the complaint in the *Moore* suit. MMG admits Exhibit A is a true and correct copy of that complaint. (MMG's Answer, Dkt. No. 15 ¶ 1.)

For citations to the *Moore* complaint in this motion, Kinsale uses the paragraph numbering in that original document. For citations to other exhibits included as part of Docket No. 1-1, Kinsale uses the page numbers assigned to that filing by CM/ECF.

Lake and MMG for negligent security; nuisance; and negligent hiring, training, entrustment, supervision, and retention. (Compl. Ex. A ¶¶ 39-79.)

## B.    The Insurance Policies

Kinsale issued Policy No. 0100269194-0 to Lotus Lake, which provided certain general liability coverage for the policy period of November 12, 2023, to November 12, 2024 (the "Primary Policy"). (Compl. Ex. B, Dkt No. 1-1.[2]) The Primary Policy provides coverage subject to a $1 million each-occurrence limit. (Compl. Ex. B, at 21 of 267.) The Primary Policy's insuring agreement provides, in pertinent part, that Kinsale's "right and duty to defend ends when [Kinsale] have used the applicable limit of insurance in the payment of judgments or settlements." (Compl. Ex. B, at 25 of 267.) The Primary Policy includes an assault-and-battery exclusion, which in relevant part bars coverage for:

> 'suit' for 'bodily injury' [ ] arising out of, related to, or,
> in any way involving any actual or alleged assault,
> battery[].

(Compl. Ex. B, at 63 of 267.)

Kinsale also issued Policy No. 0100255487-0 to Lotus Lake, which provided certain excess liability coverage for the policy period of August 23, 2023, to July

---

[2] MMG admits Exhibit B to Kinsale's Complaint is a true and accurate copy of the Primary Policy. (MMG's Answer ¶ 14.)

11, 2024 (the "Excess Policy"). (Compl. Ex. D, Dkt. No. 1-1.[3]) The Excess Policy provides coverage subject to a $2 million each-occurrence limit. (Compl. Ex. D, at 180 of 267.) Like the Primary Policy, the Excess Policy provides that Kinsale's duty to defend ends upon the exhaustion of the applicable limit. (Compl. Ex. D, at 184 of 267.) The Excess Policy includes its own, similar, assault-and-battery exclusion, as well as a firearms exclusion that provides in relevant part:

> This insurance does not apply to any claim or suit
> arising directly or indirectly out of, related to, or in any
> way involving the use of any firearm.

(Compl. Ex. D, at 222, 224 of 267.)

### C.      Kinsale's Reservations of Rights and Settlement

On October 25, 2024 (after Kinsale was notified of the Shooting but before the *Moore* suit was filed) Kinsale issued a reservation of rights letter to Lotus Lake and to MMG. (Compl. Ex. E, Dkt No. 1-1.) After the *Moore* suit was filed, Kinsale sent a second reservation of rights letter to MMG, dated February 7, 2025. (Compl. Ex. F, Dkt No. 1-1.) Kinsale began defending MMG against the *Moore* suit under those reservations of rights. (*See* MMG's Answer ¶ 26; MMG's First Am. Countercl. ¶ 18.)

---

[3] MMG has admitted Exhibit C to Kinsale's Complaint is a true and accurate copy of the Excess Policy. (MMG's Answer ¶ 16.)

By letter dated April 9, 2025, Ms. Moore and Ms. Lester sent a time-limited demand to Lotus Lake demanding $3,000,000—i.e., the combined limits of the Primary Policy and Excess Policy (collectively, the "Policies")—in exchange for a limited liability release of Lotus Lake. (Compl. ¶ 29; MMG's First Am. Countercl. ¶ 40.) On May 9, 2025, Kinsale accepted the Demand. (Compl. ¶ 30; MMG's First Am. Countercl. ¶ 43.) On July 7, 2025, Kinsale notified MMG that the limits of the Policies were exhausted in further of a settlement and that Kinsale would provide MMG's other carriers 30 days from the finalization of the settlement to pick up MMG's defense. (MMG's First Am. Countercl. ¶ 51.)

### D.    The Claim for Declaratory Relief and Counterclaim

On July 16, 2025, Kinsale filed this declaratory judgment action. (*See generally* Compl.) Kinsale seeks a declaration that it owes no duty to defend or indemnify MMG in connection with the *Moore* suit. (*See* Compl.)

On October 3, 2025, MMG filed a two-count counterclaim alleging that Kinsale acted in "bad faith" by settling the claims against Lotus and that such settlement breached the Policies. (*See* MMG's First Am. Countercl.). MMG's counterclaim is predicated on its mistaken belief that the Policies obligated Kinsale to defend and indemnify MMG in the *Moore* suit. (*See* MMG's First Am. Countercl. ¶ 29.)

### III.    LEGAL STANDARD

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *Payne v. Doco Credit Union*, 734 F. App'x 623, 627 (11th Cir. 2018) (cleaned up). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1255 (11th Cir. 2010). When reviewing a motion for judgment on the pleadings, the court must "accept as true all material facts alleged in the non-moving party's pleading, and…view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

Courts consider the complaint in its entirety, including any written instrument attached thereto as an exhibit, "without converting the motion into one for summary judgment only if the attached document is (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). "'Undisputed' in this context means that the authenticity of the document is not challenged." *Id.* In ruling on a Rule 12 motion in an insurance coverage action, the court may consider the insurance policy and underlying

complaint that are attached as exhibits to the complaint and admitted by the non-moving party. *See Nationwide Prop. & Cas. Ins. Co. v. O'Neill*, Civ. Action No. 3-13-cv-47, 2013 WL 5972471, *2 (M.D. Ga. Nov. 8, 2013).

## IV.    ARGUMENT AND CITATION TO AUTHORITY

Kinsale owes no duty to defend or indemnify MMG for several reasons. "[W]hether an insurer has a duty to defend depends on the language of the policy as compared with the allegations of the complaint." *HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662, 666 (11th Cir. 2012). The "allegations of the complaint are looked to to determine whether a liability covered by the policy is asserted." *Id.* (quotation and emphasis omitted). "If there is no duty to defend, there is no duty to indemnify." *Nat'l Cas. Co. v. Pickens*, 582 F. App'x 839, 841 (11th Cir. 2014). For two separate and independent reasons, Kinsale has no duty to defend or indemnify MMG here.

*First*, multiple exclusions bar coverage for MMG in connection with the Shooting and the *Moore* suit. Both Policies contain exclusions for claims arising out of assault or battery, and it is undisputed the *Moore* suit is a claim that arises out of assault or battery. Similarly, the Excess Policy contains an exclusion for claims arising out of the use of a firearm, and it likewise is undisputed the *Moore* suit arises out of the alleged use of a firearm. Those exclusions preclude any duty to defend or indemnity MMG under either Policy, regardless of any other issue.

8

*Second*, and separately, Kinsale has exhausted the limits of both Policies by paying to settle the claims against its named insured Lotus Lake notwithstanding those coverage issues. Georgia law is well-settled that a liability insurer faced with multiple claims may choose to settle certain claims instead of others, and Kinsale's decision to settle on behalf of Lotus Lake (and thereby exhaust its policy limits) terminates any obligation it may have otherwise owed to MMG.

Each of these issues precludes any duty to defend or indemnify MMG, which warrants summary judgment for Kinsale and against MMG's counterclaim for breach of contract. And, because there can be no bad faith if there is no coverage, summary judgment also is warranted against MMG's counterclaim for bad faith. *See Wedde v. Ctr. Mut. Ins. Co.*, 2025 WL 3088901, at *12 (N.D. Ga. Sept. 22, 2025).

Finally, setting aside those coverage defenses, the Court should enter judgment in Kinsale's favor on MMG's counterclaim for bad faith because it simply fails to state a claim under Georgia law. There are two types of insurer bad faith in Georgia: (1) a statutory claim under O.C.G.A. § 33-4-6; and (2) a common-law claim for bad-faith failure to settle. MMG does not allege the former, nor does it allege any of the prerequisites to such a claim (such as a proper pre-suit demand). *See BayRock Mortg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19 (2007). MMG also does not allege an actual judgment or binding

9

settlement against it in excess of policy limits, which is an absolute prerequisite to a failure-to-settle claim under Georgia law. *United Restoration & Pres., Inc. v. Maxum Indem. Co.,* 2018 WL 1936530, at *5 (N.D. Ga. Jan. 16, 2018). As a result, MMG's counterclaim for bad faith fails without even reaching the question of coverage under the Policies.

For each of those reasons, Kinsale is entitled to judgment on the pleadings in its favor and against MMG.

### A.     The Policies' exclusions preclude coverage.

The Policies contain several exclusions that bar coverage for MMG in connection with the *Moore* suit. An insurer has no duty to defend when the allegations in an underlying complaint are excluded by a specific policy provision. *See, e.g., City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 231 Ga. App. 206, 498 S.E.2d 782, 784 (1998); *Travelers Prop. Cas. Co. of Am. v. Kansas City Landsmen, L.L.C.,* 592 F. App'x 876, 882 (11th Cir. 2015). An insurer can rely solely on the allegations contained within the pleadings to establish that a policy exclusion precludes coverage. *See First Specialty Ins. Corp., Inc. v. Flowers*, 284 Ga. App. 543, 545, 644 S.E.2d 453, 455 (2007); *Travelers Prop. Cas. Co. of Am.*, 592 F. App'x at 882.

10

### 1.    The *Moore* Suit's Allegations Clearly Constitute an Assault and Battery under Georgia Law.

First, both Policies exclude coverage for injuries:

> arising out of, related to, or, in any way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked.

(*See* Compl. Ex. B, at 63 of 267; Compl. Ex. D, at 224 of 267.[4]) Those exclusions bar coverage here. The *Moore* suit seeks to hold MMG liable for negligence and nuisance based on a third party's intentional shooting of Mr. Brown. That intentional shooting is an "actual or alleged assault, battery, harmful or offensive contact;"[5] Georgia law is clear the claims against MMG arise out of that conduct. *See, e.g., First Specialty Ins. Corp. v. Flowers*, 284 Ga. App. 543, 545 (2007); *Cont'l Cas. Co. v. H.S.I. Fin. Servs., Inc.*, 266 Ga. 260, 262 (1996); *Jefferson Ins. Co. of N.Y. v. Dunn*, 269 Ga. 213, 215 (1998); *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 372-73 (2004); *Eady v. Capitol Indem. Corp.,* 232 Ga. App. 711, 713-14 (1998). A claim "arises out of" assault, battery, or other excluded conduct when that claim would not exist "but for" the assault or battery. *See Dunn*, 269 Ga. at 215; *Pilz*, 267 Ga. App. at 372-73.

---

[4] The Excess Policy's assault-and-battery exclusion applies to several additional types of conduct not at issue here, but otherwise it is substantively identical to the Primary Policy's.

[5] Setting aside the exclusions' broad reference to "harmful or offensive conduct," there is no question that the Shooting constitutes assault and/or battery under Georgia law. *See* O.C.G.A. §§ 16-5-21, 16-5-23.1.

11

The claims against MMG in the *Moore* suit would not exist but for the

Shooting. As the Georgia Court of Appeals has explained:

> Notwithstanding tort liability theories, the underlying
> facts and circumstances of the claims asserted
> determine whether or not a policy exclusion applies,
> because the exclusionary clause is focused solely upon
> the genesis of the underlying plaintiff's claims—if those
> claims arose out of the excluded acts[,] then coverage
> need not be provided.

*Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 114 (2012). Given that,

Georgia courts have repeatedly held that claims against the owner or manager of

property for negligently failing to prevent third-party criminal attacks arise out

of assault or battery. *See, e.g., id.; Eady*, 232 Ga. App. at 712. The same goes for

claims of negligent hiring, supervision, retention, and the like. *See, e.g., Dunn*, 269

Ga. at 215. And the same is true for the underlying claim against MMG for

creating a nuisance. *Capitol Specialty Ins. Corp. v. PTAV, Inc.*, 331 F. Supp. 3d 1329,

1335 (N.D. Ga. 2018).

Given this clear Georgia law, this Court has repeatedly held that similar

assault-and-battery exclusions bar coverage for claims against a property owner

or manager arising out of third-party criminal attacks. *See, e.g., Colony Ins. Co. v.

Henry Props., Inc.*, No. 1:21-CV-4600-TWT, 2022 WL 2668377, at *3 (N.D. Ga. July

11, 2022); *Nautilus Ins. Co. v. EJIII Dev. Co.*, No. 1:17-CV-2048-TCB, 2018 WL

3524639, at *3 (N.D. Ga. July 19, 2018); *Gen. Star Indem. Co. v. Jones*, No. 1:22-CV-4662-MHC, 2024 WL 4524126, at *4 (N.D. Ga. Mar. 26, 2024).

This case is no different. The *Moore* suit alleges Mr. Brown was intentionally shot by an unknown third-party assailant. (*See* Dkt No. 1-1, pp. 6-7, ¶¶19-23). All of the claims against MMG in the *Moore* suit are predicated on MMG's failure to prevent that shooting from happening; in other words, Mr. Brown being shot is the basis for all of the damages his estate seeks to recover in the *Moore* suit. (*See* Dkt No. 1-1, pp. 9-16, ¶¶ 39-79).

As a result, the Policies' assault-and-battery exclusions bar any duty to defend or indemnify MMG in connection with the *Moore* suit. Consequently, this Court should (1) grant Kinsale's request for declaratory relief and (2) enter judgment in favor of Kinsale on MMG's Amended Counterclaim.

### 2.    The Excess Policy's firearms exclusion bars coverage.

Separately, the Excess Policy's Absolute Firearm Exclusion bars any coverage under that Policy. That exclusion precludes coverage for "any suit arising directly out of, related to, or in any way involving the use of a firearm." (SMF ¶ 7. ) That exclusion bars coverage here the same way the assault-and-battery exclusions do: the *Moore* suit (and all of the underlying claims against

MMG) expressly arises out of the alleged use of a firearm. (*See* Compl. Ex. A ¶¶ 23, 47, 66, 79.)

Courts applying Georgia law have routinely enforced similar exclusions, just as they have assault-and-battery exclusions. *See, e.g., Henry Properties*, 2022 WL 2668377, at *3; *Hudson Specialty Ins. Co. v. Snappy Slappy LLC*, No. 5:28-cv-00104, 2019 WL 1938801, *3 (M.D. Ga. May 1, 2019); *Great Lakes Insurance SE v. Habif Prop. LLC*, No. 5:20-cv-343, 2021 WL 2417156, *5 and n.6 (N.D. Ga. June 14, 2021). As a result, the Excess Policy's Firearms exclusion bars coverage for MMG in relation to the *Moore* suit.

Therefore, this Court should (1) grant Kinsale's request for declaratory relief on the Excess Policy and (2) enter judgment in favor of Kinsale on MMG's Amended Counterclaim.

### 3.    The Policies have been exhausted.

Even if the exclusions above did not bar coverage, any duty to defend MMG that Kinsale would owe was extinguished upon the exhaustion of the Policies' limits of liability notwithstanding those coverage defenses. Under Georgia law and the Policies' plain language, Kinsale's coverage obligations end once Kinsale has exhausted its limits through settlement. *See Travelers Prop. Cas. Co. of Am. v. Cont'l Cas. Co.*, 226 F. Supp. 3d 1359, 1373 (N.D. Ga. 2017); *Gibson v. Preferred Risk Mut. Ins. Co.*, 216 Ga. App. 871, 873 (1985); *Four Season Trucking Inc.*

*v. Grange Mut. Cas. Co.*, No. 23-12013, 2024 WL 1635692, at \*3 (11th Cir. Apr. 16, 2024). It is undisputed that Kinsale agreed to settle the *Moore* suit claims against Lotus Lake, Kinsale's named insured, in exchange for the combined Policy limits of $3 million. (*See* MMG's Am. Countercl. ¶ 43.)

MMG, despite its protestations, has no legal basis to contest that decision. Georgia law gives liability insurers broad latitude to settle claims on behalf of their insureds and, faced with multiple competing claims, to pick and choose which claims to settle, even if such settlement exhausts the available limits of insurance and consequently exposes an insured to additional claims. *Allstate Ins. Co. v. Evans*, 200 Ga. App. 713, 714–715 (1991); *Miller v. Ga. Interlocal Risk Mgmt. Agency*, 232 Ga. App. 231, 231 (1998); *Walston v. Holloway*, 203 Ga. App. 56, 56 (1992); *Allied Property & Cas. Ins. Co. v. Bed Bath & Beyond, Inc.*, No. 1:12-CV-1265-RWS, 2014 WL 1292456, at \*9 (N.D. Ga. Mar. 31, 2014). In other words, Georgia law expressly authorizes Kinsale to do exactly what it did here: settle a claim on behalf of one insured while leaving another claim pending. That settlement terminates any obligation Kinsale may have otherwise owed MMG.

For this reason as well, Kinsale is entitled to judgment on the pleadings.

### B.    MMG's counterclaim for bad faith is facially deficient.

Kinsale owes MMG no coverage under the Policies for each of the reasons above, so it also cannot be liable for bad faith. *See Wedde v. Ctr. Mut. Ins. Co.*, No.

1:24—CV-3392-SEG, 2025 WL 3088901, at *12 (N.D. Ga. Sept. 22, 2025). But, even if this claim somehow were covered, Kinsale still would be entitled to judgment on the pleadings against MMG's counterclaim for bad faith, because that counterclaim is meritless regardless of coverage.

MMG's second counterclaim asserts a count for "common law bad faith," and it outlines a long list of grievances MMG has regarding Kinsale's decision to settle on behalf of Lotus. (MMG's Am. Countercl. ¶¶ 32-64.) None of those grievances, however, amounts to a cognizable claim for bad faith under Georgia law.

Georgia law recognizes two types of "bad faith" claims against insurers. The first is the statutory cause of action under O.C.G.A. § 33-4-6 and the other type of bad-faith claim recognized by Georgia courts is one for bad-faith failure to settle a third-party claim against the insured. *See S. Gen. Ins. Co. v. Holt*, 262 Ga. 267, 268-69 (1992).[6] Setting aside that the Policies *do not provide* coverage for the *Moore* suit, a failure-to-settle claim requires a subsequent award against an insured in excess of limits. *Trinity Outdoor, LLC v. Central Mut. Ins. Co.*, 285 Ga. 583, 583 (2009); s*ee also United Restoration & Pres., Inc. v. Maxum Indem. Co.*, 2018

---

[6] MMG has conceded it is not pursuing an O.C.G.A. § 33-4-6 claim.

16

WL 193650, at *5 (N.D. Ga. Jan 16, 2018). In *Trinity Outdoor*, this Court certified

two questions to the Georgia Supreme Court:

> The first certified question asks whether an action for
> negligent or bad faith failure to settle a case requires
> that a judgment be entered against an insured in excess
> of the policy limits before the action can be asserted.
> The second certified question then queries, if a
> judgment in excess of policy limits is not required, what
> must a plaintiff show to prove negligent or bad faith
> failure to settle, and what damages are recoverable.

*Trinity Outdoor, LLC v. Cent. Mut. Ins. Co.*, 285 Ga. 583, 583 (2009). The Georgia

Supreme Court answered the first question "yes." *Id.* In other words, if there is

no excess judgment or binding settlement, there can be no bad-faith failure-to-

settle claim. *Id.* at 587; *see also Game Truck Georgia, LLC v. Atl. Specialty Ins. Co.*, 849

F. App'x 233, 237 (11th Cir. 2021). Since there *is* no excess judgment or binding

settlement against MMG here, Georgia law is clear and well-settled that MMG

cannot assert a bad-faith failure-to-settle claim.

MMG's other complaints—e.g., that Kinsale did not properly communicate

with MMG's other insurers about the settlement, or that Kinsale "created defense

instability" by filing this declaratory judgment action—do not offer any other

support. Whether MMG thinks those grievances support a failure-to-settle claim

(or some other, as-yet-unrecognized bad-faith claim) is unclear, though MMG's

counterclaim flirts with the idea of a breach of the duty of good faith and fair

dealing. (*See* Dkt. No. 24 ¶ 61.) But there is no independent cause of action under

Georgia law for breach of the contractual covenant of good faith and fair dealing, nor does a supposed breach of that covenant otherwise support a separate bad-faith or other extracontractual claim. *Alan's of Atlanta v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990); *XL Ins. Am., Inc. v. Sto Corp.*, 2008 WL 11407266, at *6 (N.D. Ga. Feb. 25, 2008).

With all that in mind (and even ignoring the coverage issues discussed above), MMG cannot support a bad-faith claim under Georgia law without a judgment or binding settlement in excess of limits. MMG has not pled, and cannot show, that either exists. As a result, Kinsale is entitled to judgment on the pleadings as to MMG's counterclaim for bad faith.

## V.    CONCLUSION

The Court should grant Kinsale judgment on the pleadings in favor of Kinsale's complaint and against MMG's counterclaims, because (1) Policies do not provide MMG coverage for the reasons outlined above and (2) MMG's counterclaim for bad faith fails even irrespective of those coverage issues.

Accordingly, Kinsale respectfully requests this Court grant its motion for judgment on the pleading judgment, declare Kinsale has no duty to defend or indemnify MMG against the *Moore* suit, and dismiss MMG's counterclaim.

Respectfully submitted this 16th day of April, 2026.

**FIELDS HOWELL LLP**
665 8th Street NW
Atlanta, GA 30318
(404) 214-1250 (Telephone)
(404) 214-1251 (Fax)
bgossett@fieldshowell.com
jbauer@fieldshowell.com
wkeegan@fieldshowell.com

*/s/ Brandon R. Gossett*
Brandon R. Gossett
Georgia Bar No. 120424
James M. Bauer
Georgia Bar No. 460185
William J. Keegan
Georgia Bar No.: 278159

*Counsel for Plaintiff Kinsale Insurance Company*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

KINSALE INSURANCE COMPANY, )
)
     Plaintiff, )
)
v. )
)
MMG MANAGEMENT, LLC, )    Civil Action No.:
SHENISHA MOORE, as Parent of )    1:25-cv-03949-SDG
D.B., a minor, and BETTY LESTER, as )
Administrator of the ESTATE OF )
DEMARIOUS BROWN, )
)
     Defendants. )

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that the foregoing document has been prepared with a font and point selection (Book Antiqua, 13 point) that is approved by the Court as indicated in Local Rule 5.1(C) and 7.1(D).

Respectfully submitted this 16th day of April, 2026.

| | |
|---|---|
| **FIELDS HOWELL LLP** | /s/ Brandon R. Gossett |
| 665 8th Street NW | Brandon R. Gossett |
| Atlanta, GA 30318 | Georgia Bar No. 120424 |
| (404) 214-1250 (Telephone) | James M. Bauer |
| (404) 214-1251 (Fax) | Georgia Bar No. 460185 |
| bgossett@fieldshowell.com | William J. Keegan |
| jbauer@fieldshowell.com | Georgia Bar No.: 278159 |
| wkeegan@fieldshowell.com | |
| | *Counsel for Plaintiff Kinsale Insurance Company* |

20

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon counsel of record via CM/ECF and via email.

Respectfully submitted this 16th day of April, 2026.

FIELDS HOWELL LLP
665 8th Street NW
Atlanta, GA 30318
(404) 214-1250 (Telephone)
(404) 214-1251 (Fax)
bgossett@fieldshowell.com
jbauer@fieldshowell.com
wkeegan@fieldshowell.com

/s/ Brandon R. Gossett
Brandon R. Gossett
Georgia Bar No. 120424
James M. Bauer
Georgia Bar No. 460185
William J. Keegan
Georgia Bar No.: 278159

Counsel for Plaintiff Kinsale Insurance Company