**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| KINSALE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>MMG MANAGEMENT, LLC, SHENISHA MOORE, as Parent of D.B., a minor, and BETTY LESTER, As Administrator of the ESTATE OF DEMARIOUS BROWN,<br><br>    Defendants. | CIVIL ACTION NO.<br>1:25-cv-03949-SDG |

**DEFENDANT MMG MANAGEMENT, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Kinsale Insurance Company ("Kinsale") asks this Court to reward its own bad faith. After acknowledging Defendant MMG Management, LLC ("MMG") as an additional insured, undertaking MMG's defense, and controlling MMG's litigation strategy in an underlying wrongful death action, Kinsale settled solely for the benefit of itself and another insured — exhausting $3,000,000 in policy limits without securing any release for MMG, without obtaining MMG's consent, and without so much as informing MMG of its intentions. Having orchestrated that outcome, Kinsale now seeks a declaration that it never owed MMG any duty despite contrary law.

1

Throughout its briefing before this Court, Kinsale has not cited a single case substantively resembling the circumstances here: an insurer seeking a declaratory judgment that policy exclusions bar coverage for an insured, ***after that same insurer paid out policy limits on the exact same claims, under the same exact policies and purported exclusions***, solely to protect another insured and itself. That silence speaks volumes. Kinsale's position is not supported by Georgia law because it is fundamentally at odds with the duties Georgia law imposes on insurers.

Rather than engage with the substance of its obligations, Kinsale retreats behind inapplicable case law on policy exclusions — as though it were not the architect of MMG's predicament. The well-pleaded allegations of MMG's Answer and Counterclaim, taken as true, establish that Kinsale breached its duties of good faith, equal consideration, and fair dealing owed to MMG. Genuine issues of material fact pervade every element of Kinsale's Motion for Judgment on the Pleadings (the "Motion"), and this Court should deny it in its entirety.

## FACTUAL BACKGROUND

Kinsale's Complaint and MMG's counterclaim of bad faith arise from Kinsale's handling of the defense and settlement of an underlying wrongful death case, styled as *Shenisha Moore v. Lotus Lake Group, LLC, and MMG Management, LLC*, which is pending in the State Court of Gwinnett County, Georgia ("*Moore* suit"). Prior to the *Moore* suit, Kinsale issued a primary commercial liability policy

and an excess policy (collectively, the "Policies") to Lotus Lake Group, LLC ("Lotus"). (DKT 1-1, Exhibits B, D). On or about December 20, 2024, the *Moore* suit was filed, naming both Lotus and MMG as Defendants on claims of negligence with respect to security, maintaining a nuisance, hiring, training, entrustment, supervision, and retention in connection to the wrongful death claims. (*Id.,* Exhibit A). Kinsale acknowledged MMG as an additional insured under the Policies on October 25, 2024, and again on February 7, 2025. (*Id.*, Exhibits E, F).

On February 18, 2025, MMG received an offer of settlement for $1,000,000 to fully satisfy any and all claims, subject to the preservation of the ability for the *Moore* Plaintiffs to seek "recovery from applicable additional insurance coverages including excess or umbrella coverages." (DKT 15 ¶ 35). This settlement, which had an expiration of March 20, 2025, was forwarded to Kinsale, which transmitted an alternative counteroffer of $1,000,000 in exchange for a release of both Lotus and MMG. This counteroffer was not accepted. *(Id.* ¶ 39).

On April 9, 2025, two separate offers were sent from the *Moore* Plaintiffs: (1) a $3,000,000 demand offering a release of Lotus and Kinsale sent to the Kinsale-appointed counsel for Lotus, and (2) a $6,000,000 demand offering a release of MMG and its associated tower of insurance carriers ("MMG Tower") sent to the Kinsale-appointed counsel for MMG. (*Id.* ¶ 40). MMG's appointed counsel did not

forward that demand to Kinsale until April 21, at which point Kinsale reached out to the MMG Tower and stated they were "reviewing" the demand. (*Id.* ¶¶ 41–42).

Rather than reviewing the MMG-related demand, Kinsale instead settled with the *Moore* Plaintiffs on May 9, 2025, agreeing to pay $3,000,000 for a release of Lotus and Kinsale. (*Id.* ¶ 43). That same day, Kinsale wrote separately regarding the MMG demand, asserting it was not addressed to Kinsale and did not offer any release of Kinsale or Lotus, and stating the $3,000,000 settlement for Lotus and Kinsale exhausted both policies and left no Kinsale coverage available for MMG. (*Id.* ¶ 44). Prior to May 9, Kinsale did not inform MMG, MMG's coverage counsel, or the MMG Tower that it intended to settle on behalf of Lotus and Kinsale only, exhausting the Kinsale policy limits without obtaining any protection for MMG. (*Id.* ¶ 45).

On May 16, 2025, counsel for the *Moore* Plaintiffs contacted the Kinsale-appointed counsel for MMG asking whether Kinsale would seek a limited-liability release for MMG so that they could accept settlement and pursue MMG only to the extent of other, non-Kinsale coverage. (*Id.* ¶ 46). Counsel relayed the conversation to Kinsale on May 19, and claims-counsel for Kinsale stated that the *Moore* Plaintiffs should "reach out to counsel that tendered the offer" for clarification — even though it concerned Kinsale's own $3,000,000 demand and settlement. (*Id.* ¶¶ 47–48). This

discussion about the potential for a limited-liability release for MMG was never relayed to MMG, MMG's coverage counsel, or the MMG Tower. *(Id.* ¶ 50).

On July 7, 2025, claims counsel for Kinsale advised Kinsale-appointed counsel for MMG that Kinsale had "reached an agreement for limited liability release" as to Lotus and Kinsale only, and would end its defense of MMG in 30 days after providing additional carriers the opportunity to assume the defense. (*Id.* ¶ 51). On July 16, Kinsale initiated this declaratory judgment seeking a declaration that it owed no further duty to defend or indemnify MMG in the *Moore* suit based on a yet-to-be-approved by the State Court settlement agreement. (*Id.* ¶ 52; DKT 1 ¶ 32). On July 22, the Consent Petition for Compromise of Claims and Motion to Approve Settlement Documents was filed in the *Moore* suit, which purportedly was consented to by the Kinsale-appointed counsel for MMG. (DKT 15 ¶ 53). However, appointed counsel never consulted with MMG, MMG's coverage counsel, or the MMG Tower regarding consent to the settlement, which expressly preserved the *Moore* Plaintiffs claims against MMG while fully releasing Kinsale and Lotus. (*Id.* ¶¶ 54–55).

On August 6, 2025, MMG's coverage counsel asked whether Kinsale would continue providing MMG a defense in the declaratory action, given the July 7 communication that it would no longer do so after 30 days. (*Id.* ¶ 56). Prior to August 6, MMG had undertaken efforts to pursue substitute defense counsel, incurring time and expenses associated with the process. (*Id.* ¶ 59). On August 8, Kinsale responded

that it "has not withdrawn its defense of MMG," that the possibility of withdrawal would only occur after finalization and payment of the Lotus settlement, and that Kinsale would give 30 days' notice "should [it] elect to withdraw." (*Id.* ¶ 58). Rather than respecting that it owes MMG independent duties of good faith, ordinary care, and equal consideration in investigating, evaluating, communicating about, and responding to settlement opportunities and managing the defense of claims asserted against MMG, Kinsale has made no promises of continued defenses for MMG and has continued to proceed in seeking a declaratory judgment.

## LEGAL STANDARD AND AUTHORITY

After the pleadings are closed, a party may seek judgment on the pleadings based only upon the materials contained in those pleadings. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings may not be granted unless plaintiff establishes on the face of the pleadings that "there is no genuine issue of material fact as to any element of the claim." *Burden v. Trident Asset Mgmt., LLC*, 17-cv-03496, 2018 U.S. Dist. LEXIS 228822, at *21 (N.D. Ga. Dec. 27, 2018). "A motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *WESI, LLC v. Compass Envtl., Inc.*, 509 F. Supp. 2d 1353, 1357 (N.D. Ga. 2007). Under the standard, well-pleaded factual allegations are accepted as true and construed in the light "most favorable to the nonmoving party." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). "A judgment on the

6

pleadings should not be granted if questions of fact remain to be decided." *Weeden v. Continental Health Affiliates, Inc.*, 713 F. Supp. 396, 398 (N.D. Ga. 1989).

## ARGUMENT

Kinsale's Motion relies on three core arguments in asserting its entitlement to judgment on the pleadings: (1) two policy exclusions (the "Policy Exclusions") bar MMG's coverage, (2) Kinsale has no remaining duty to defend or indemnify MMG in the *Moore* suit due to exhaustion of the Policies, and (3) MMG cannot assert a bad faith claim absent an excess judgment against MMG. As already discussed, both in MMG's Answer and Counterclaim and this Response, Kinsale's arguments misunderstand what obligations and duties it owes to MMG.

## I.   Kinsale is Not Entitled to Declaratory Judgment.

### A.   Kinsale is Estopped from Denying Coverage.

Kinsale argues that because it has exhausted the limits of the Policies by settling solely on behalf of Lotus, it has no additional obligations to defend MMG under the Policies. On the contrary, Kinsale is estopped from withdrawing its defense of MMG, which Kinsale admits is an insured under the Policies, in avoidance of its contractual obligations.

"[I]f an insurer fails to properly reserve its rights, the insurer may be estopped from later denying coverage." *Penn-Am. Ins. Co. v. Morgan Fleet Servs., Inc.*, 356 Ga. App. 372, 375-376 (2020). According to the Georgia Supreme Court, uncovered

or excluded risks "may be subject to the doctrine [of estoppel] where the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage." *Prescott's Altama Datsun, Inc. v. Monarch Ins. Co. of Ohio*, 253 Ga. 317, 318 (1984). While Kinsale points to the reservation of rights letters it sent to MMG, those failed to "fairly informs the insured of the insurer's position," including that it apparently could secure a release for Lotus to the detriment of MMG under the same insurance policy. *World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 287 Ga. 149, 152 (2010).

Kinsale's actions create, at minimum, a factual question as to whether it acted in bad faith such that it is estopped from denying coverage to MMG. For months after MMG timely submitted its claim, Kinsale provided MMG with a defense. Nothing in Kinsale's reservation of rights letters alerted MMG of the possibility that Kinsale may pay its policy limits *solely to protect Lotus*, leaving MMG without protection. Moreover, Kinsale intentionally overlooks the fact that it paid $3,000,000 to settle claims against Lotus and, further, that Lotus's insurance policies contained the same exclusions. Either Kinsale made that payment gratuitously, and the Policies are not exhausted, or the exclusions are inapplicable. But Kinsale is estopped from arguing that both its payment to settle the claims against Lotus was covered by the Policies *and* the Policy Exclusions bar coverage for claims against MMG. Indeed, other courts have held that insurers are estopped from treating insureds differently.

8

*See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Valley Forge Ins. Co.*, 1:06-CV-2074-JOF, 2009 U.S. Dist. LEXIS 23663, at \*23–24 (N.D. Ga. March 23, 2009) (holding that insurer had a duty to defend insured after the insurer agreed to defend a second insured "as to the exact same claim").

None of the cases cited by Kinsale dictate a contrary result. Kinsale cites *Allstate Ins. Co. v. Evans*, 200 Ga. App. 713 (1991), *Miller v. Georgia Interlocal Risk Mgmt. Agency*, 232 Ga. App. 231 (1998), *Walston v. Holloway*, 203 Ga. App. 56 (1992), and *Allied Prop. & Cas. Ins. Co. v. Bed Bath & Beyond, Inc.*, 1:12-CV-01265-RWS, 2014 U.S. Dist. LEXIS 42977 (N.D. Ga. Mar. 31, 2014) in support of the position that it may resolve all claims brought against its insureds however it sees fit. But the suits in *Walston*, *Allstate Ins. Co.*, and *Miller* were brought by the claimants against the insurer after the insurer exhausted its policy limits on other related claims, and they were unable to collect from the insurer. The court in *Walston* acknowledges the policy rationale behind allowing this dynamic: an insurer may settle part of multiple claims against its insured because otherwise, it would have to "await the reduction of all claims to judgment before paying any of them," instead of potentially settling some claims favorable to the insured to reduce their overall liability. 203 Ga. App. at 57. Kinsale inverts the dynamic at issue in these cases, arguing instead that insureds may not protest when the insurer they relied on to defend and settle claims against them elects not to secure releases for all the insureds.

9

But more importantly, in all of these cases, including *Allied Prop.*, the courts determined the insurer had acted in good faith—Kinsale can make no such showing here. See *id.* ("[A] liability insurer may, ***in good faith*** . . . settle part of multiple claims against its insured even though such settlements deplete or exhaust the policy limits." (citing *Allstate Ins. Co.*, 200 Ga. App. at 714) (emphasis added)); *Miller*, 232 Ga. App. at 231 (concluding the insurer had acted "in good faith" to "settle part of multiple claims against its insured"); *Allied Prop. & Cas. Ins. Co.*, 2014 U.S. Dist. LEXIS 42977, at *34. As discussed *infra*, MMG has shown Kinsale exhausted the limits of its Policies in bad faith with regard to MMG.

### B.    Kinsale has Waived the Right to Rely on the Policy Exclusions to Deny Coverage in this Declaratory Action.

Kinsale argues that the Policy Exclusions bar coverage in the Kinsale Policies. The Court need not engage with the merits of this argument because it has been waived. The Motion points to nearly identical "assault and battery" exclusions found in the Policies, which generally state:

> This insurance does not apply to any claim or "suit" for "bodily injury" . . .arising out of, related to, or, in any way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked.

(DKT 1-1 at 63, 143). Kinsale also refers to a "firearms" exclusion in the Excess Policy, which states: "This insurance does not apply to any claim or suit arising

10

directly or indirectly out of, related to, or in any way involving the use of any firearm." (*Id.* at 222).

The problem with Kinsale's reliance on these exclusions is that it did not seek declaratory judgment as to them. Rather, Kinsale only requested a declaration that it owes no coverage obligations to MMG because it exhausted the Kinsale Policies solely to protect Lotus. This is evident from the Complaint, which asserts only one cause of action that refers to "Exhaustion of the Policies' Limits." (DKT 1, Count One). There, Kinsale alleged only that "Kinsale has exhausted the limits of the Primary Policy and the Excess Policy by settling the underlying claims against Lotus" and "[a]ccordingly, Kinsale owes no duty under the Primary Policy or the Excess Policy to defend or indemnify MMG." (DKT 1 ¶¶ 43–44). In the Prayer for Relief, Kinsale only sought a declaration "that the exhaustion of the Primary Policy's and Excess Policy's limits extinguishes any duty to defend or indemnify MMG." (*Id.*, at 14).

The only filing where Kinsale discussed the Policy Exclusions prior to this Motion was in its Answer to MMG's Counterclaim. Kinsale has not attempted to amend its Complaint, which only refers to the original declaratory judgment action filed on July 16, 2025. (DKT 46, at 6). Missing from that Complaint is any reference to any exclusion barring coverage. Therefore, Kinsale cannot now seek declaratory judgment on the nature and application of the Policy Exclusions.

**C.    There are Questions of Fact as to Whether the Policy Exclusions Bar Coverage as to the Claims of the *Moore* Suit.**

Even if the Court finds that Kinsale has not waived its ability to deny coverage, there are still genuine issues of fact present in the underlying lawsuit that question whether these exclusions apply. "In Georgia, insurance contracts are liberally construed in favor of coverage." *Houston Specialty Ins. Co. v. Five Paces Inn Co.*, 823 F. App'x 897, 899 (11th Cir. 2020). And any "exceptions and exclusions to coverage must be narrowly and strictly construed against the insurer and [forgivingly] construed in favor of the insured to afford coverage." *Edible IP, LLC v. Am. Zurich Ins. Co.*, 808 F. Supp. 3d 1355, 1365 (N.D. Ga. 2025). Further, "[i]f the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 497 (2007).

The exclusions Kinsale points to purportedly bar coverage if the subject claim "aris[es] out of, relate[s] to, or in any way involv[es]" the prohibited conduct (*i.e.* assault and/or battery or usage of a firearm). (DKT 1-1 at 63, 143, 222). Georgia courts have construed the term "arising out of," in exclusion clauses to generally require a "but for" causation. *Edible IP*, 808 F. Supp. 3d at 1364–65. However, each exclusion of the Policies is written so broadly to the point that Kinsale could argue, as it does here, that any claim is excluded from coverage if there is the barest allegation that at some point during the sequence of events, the claimant suffered

12

any type of injury or was in the presence of a firearm. Recently, in recognition of the dangers of such broad provisions, the Eleventh Circuit reaffirmed that policy exclusions, even if drafted to broadly exclude claims that "relate to" certain conduct, must have some limits, as otherwise they could always be read to "extend to the furthest stretch of [their] indeterminacy . . . for really, universally, relations stop nowhere." *Medmarc Cas. Ins. Co. v. Fellows Labriola LLP*, No. 25-10837, 2025 U.S. App. LEXIS 26389, at *8 (11th Cir. Oct. 10, 2025) (internal citations omitted).

The *Moore* suit is not premised solely on damages related to the bodily injuries suffered by Mr. Brown. Claims are asserted for (i) negligent security, (ii) maintaining a nuisance, and (iii) negligent hiring, training, entrustment, supervision, and retention. (DKT 1-1 at 9–16). These are not intentional tort claims based on the use of a firearm or an alleged assault and/or battery. They are theories of premises liability based on the alleged negligence of Lotus and/or MMG in managing the Grey Parc of Macon apartments. *See Northfield Ins. Co. v. Northbrook Indus., Inc.*, 749 F. Supp. 3d 1325, 1336 (N.D. Ga. 2024) ("An exclusion clause in an insurance policy is focused solely upon the genesis of the underlying plaintiff's claims."). Although the use of a firearm was alleged in the *Moore* suit, the claims are not so narrowly drafted. To the extent there is any ambiguity as to the unlimited reach of these exclusions, that ambiguity "must be strictly construed against the insurer as the

13

drafter of the document." *Federated Mut. Ins. Co. v. Ownbey Enters., Inc.*, 278 Ga. App. 1, 5 (2006).

Kinsale's Motion is seemingly predicated on Kinsale reading the face of the Complaint in *Moore*. The Georgia Supreme Court has cautioned insurers about this very behavior, warning insurers to not "allow the allegations of a third-party to determine the insured's rights under its contract[,]" for insurers have an obligation to base any decisions of coverage on the "true facts" of a case. *Colonial Oil Indus. v. Underwriters Subscribing to Policy Nos. To31504670 & To31504671*, 268 Ga. 561, 562 (1997). That there remain questions as to whether Kinsale owes a duty to defend MMG based on the claims and allegations of the *Moore* suit, and whether the exclusions bar coverage, necessarily means that this Motion should be denied.

### D.    Kinsale's Request for Declaratory Judgment as to the Duty to Indemnify is Premature.

Kinsale asks the Court to declare it has no duty to defend or indemnify MMG, and Kinsale is entitled to neither declaration. However, Kinsale's request as to the duty to indemnify deserves particular focus, as it is clearly premature. Pursuant to Article III of the U.S. Constitution, "a declaratory judgment may only be issued in a cause of an 'actual controversy.'" *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985) (quoting 28 U.S.C. § 2201). Before an insurer can obtain a declaratory judgment as to its duty to indemnify, liability must be affixed in the underlying lawsuit. *See Northfield Ins. Co*, 749 F. Supp. 3d at 1341 (finding that "[insurer]'s

14

claims [were] not ripe to the extent that they [sought] a declaration as to [insurer]'s duty to indemnify" when insured could still defeat claimant's claims in the underlying lawsuit).

No judgment or finding of liability has been entered in the *Moore* suit, and it is therefore premature for Kinsale to seek a declaration that it has no duty to indemnify MMG. The Court should require Kinsale to respect the rules of standing and hold that Kinsale cannot receive a declaration that it has no duty to indemnify until the *Moore* suit has resolved.

### E.   MMG Has Suffered Prejudice by Kinsale's Conduct.

Kinsale argues that, while it did undertake a defense of MMG: (1) Kinsale never had an obligation to defend MMG because of the Policy Exclusions, and (2) even if there was an obligation, Kinsale's exhaustion of the limits of the Policies ended the obligation. However, even under a reservation of rights, an insured may still "seek to bar an insurer from raising a defense of noncoverage *after participating in the insured's defense*" by showing prejudice. *Atain Specialty Ins. Co. v. E. H. Fortitude Inc.*, 4:23-CV-324, 2025 U.S. Dist. LEXIS 102300, at * 10 (S.D. Ga. May 29, 2025) (emphasis added) (citing *World Harvest*, 287 Ga. at 155).

Here, the basis of MMG's counterclaim is that it was prejudiced by Kinsale's actions during its defense. By securing a release only for Lotus against claims that Kinsale now says bars coverage for MMG, Kinsale has clearly failed to respect the

15

tenet of Georgia insurance law that "an additional insured is entitled to the same protection as a named insured." *St. Paul Fire & Marine Ins. Co.*, 2009 U.S. Dist. LEXIS 23663, at *23. Kinsale is not permitted to undertake a defense of an insured, then withdraw from that defense in a manner that prejudices said insured, even if that defense was undertaken with a reservation of rights. *See Gibson v. Preferred Risk Mut. Ins. Co.*, 216 Ga. App. 871, 873 (1995). Kinsale has not addressed the obvious prejudice MMG has and continues to face by withdrawing its defense, and because any factual dispute of that prejudice cannot be resolved on the face of the pleadings, the Motion must be denied.

Kinsale's Motion entirely ignores the black-letter law that "an insurer cannot 'abandon the defense of [a] claim in mid-course to the *prejudice* of the insured.'" *Four Season Trucking Inc. v. Grange Mut. Cas. Co.*, No. 23-12013, 2024 U.S. App. LEXIS 9093, at *6 (11th Cir. Apr. 16, 2024) (emphasis added) (citing *Gibson*, 216 Ga. App. at 873). *Four Season Trucking* also discussed a non-exhaustive list of considerations for determining if the withdrawal of a defense would prejudice the insured, including whether "the insured consented to the settlement agreement depleting the liability coverage." *Id.* (citing *Liberty Mut. Ins. Co. v. Mead Corp.*, 219 Ga. 6, 9 (1963)). As MMG states in its Counterclaim, the $3,000,000.00 settlement that exhausted the limits of the Policies was not consented to by MMG, nor did MMG authorize any person to consent to it on its behalf. (DKT 15, ¶¶ 53–55).

MMG's pleadings describe the prejudice it has faced and will continue to suffer from Kinsale's actions. Kinsale, however, has entirely failed to address that prejudice. As a result, Kinsale's Motion must be denied.

## II.   Kinsale is Not Entitled to Judgment on MMG's Counterclaim

The Motion's arguments as to MMG's bad faith claims are considerably more limited than in Kinsale's Motion for Summary Judgment ("MSJ") — indicative of the fact-specific nature of that inquiry.  Nonetheless, with the obvious objective of staving off a discovery process that would only further support MMG's bad faith claims, Kinsale attempts to shoehorn its arguments into the Fed. R. Civ. P. 12(c) framework.

It is important to keep focus on the legal reality — Kinsale's discretion as to settlement of claims is not without constraint. Georgia law requires that "the insurer must accord the interest of its insured the same faithful consideration it gives its own interest in determining whether to effect a settlement." *Nationwide Mut. Ins. Co. v. Turner*, 135 Ga. App. 551, 552 (1975). The insurer is bound to act in accordance with a duty of good faith and reasoned claim judgment. *Id.*; *see also U.S. Fid. & Guar. Co. v. Evans*, 116 Ga. App. 93, 95 (1967) (hereafter, "*U.S. Fidelity*") (explaining an insurer can be liable for acting with a "lack of good faith"). The key inquiry is whether the insured "acted [ ]reasonably" in responding to settlement offers and compromising claims, an inquiry which considers all "the existing

17

circumstances" around whether the insurer "has accorded the insured the same faithful consideration it gives its own interests." *S. Gen. Ins. Co. v. Holt*, 262 Ga. 267, 269 (1992) (citation omitted); *see also LabMD, Inc. v. Sentinel Ins. Co.*, No. 1:20-CV-00650-JPB, 2020 U.S. Dist. LEXIS 63612, at *4 (N.D. Ga. Feb. 28, 2020).

These principles apply fully where, such as here, multiple insureds are covered under a single policy and competing claims threaten to exhaust policy limits. Georgia law requires that all insureds be "entitled to the same protection as a named insured." *St. Paul Fire & Marine Ins. Co.*, 2009 U.S. Dist. LEXIS 233663, at *23. An insurer does not have discretion to act in bad faith by protecting the interests of one insured to the complete detriment of the other. *See Leonard Smoral v. Hanover Ins. Co.*, 37 A.D.2d 23, 25 (N.Y. 1971) ("It is absolutely no answer for the company to say that it paid the full amount of its policy if in so doing it fully protected one of its insureds and left the other completely exposed."); *Shell Oil Co. v. Nat'l Union Fire Ins. Co.*, 44 Cal. App. 4th 1633, 1647 (1996) (insurer's "disbursement of its entire policy limits to indemnify [one insured] did not discharge [insurer's] policy obligations to [another insured] but rather constituted an actionable breach of those duties"); *Lehto v. Allstate Ins. Co.*, 31 Cal. App. 4th 60, 72 (Cal. Ct. App. 1994) ("An insurer . . . cannot favor the interests of one insured over the other.").

18

### A.    MMG's Bad Faith Claim is Viable and Not Subject to Judgment on the Pleadings

The requirements imposed on an insurer like Kinsale are rooted in the insurer's unique position of power and control over the defense and resolution of claims, as the insured surrenders those decisions to the insurer under the policy. *U.S. Fidelity*, 116 Ga. App. at 95. When this power is abused, the law provides recourse for insureds to hold their insurers accountable. Georgia courts emphasize that the existence and breach of the insurer's good faith duties is a fact-intensive inquiry: "It is rather the factual situation which is significant in the light of the duty which exists," and "normally the trier of fact must make the determination of liability or nonliability." *Id.* at 94. Such claims are not well suited to be resolved at summary judgment, much less without the aid of fact discovery, as the fact-finder must undertake the fact-intensive analysis of whether "the insurer, in view of the existing circumstances, has accorded the insured 'the same faithful consideration it gives its own interest.'" *Holt*, 262 Ga. at 268–69.

However, as with its MSJ, Kinsale argues there are only two types of "bad faith" claims recognized in Georgia — statutory claims under O.C.G.A. § 33-4-6 or claims for "bad-faith failure to settle a third-party claim against the insured." (DKT 46, at 16).[1] The latter, Kinsale argues, requires an excess judgment without

---

[1] As noted in MMG's Response to Kinsale's MSJ, MMG is not seeking relief based on Georgia's bad faith statute, O.C.G.A. § 33-4-6.

exception. But Kinsale misconstrues Georgia law on this count. Georgia courts have shown their willingness to assess bad faith claims by analyzing the conduct of insurers more broadly — including, for example, whether a refusal to defend or investigate was unreasonable. *See, e.g., Liberty Mut. Ins. Co. v. Atl. Coast Line R. Co.*, 66 Ga. App. 826 (1942); *Rsrv. Life Ins. Co. v. Ayers*, 217 Ga. 206 (1961). Georgia recognizes that when an insurer controls the defense and settlement of a third-party claim against its insured, it must exercise good faith and "equal consideration" for the insured's interests. *See, e.g., Holt*, 262 Ga. at 268–69.

MMG's claims center on the type of abuse and disregard for the requirement of "equal consideration" that Georgia's bad faith claim framework is designed to address. Kinsale failed to reasonably and in good faith pursue settlement structures that would have protected MMG, instead choosing to exhaust the limits of the Policies in a manner that secured a release for Kinsale and Lotus but affirmatively left MMG exposed and prejudiced. And by procuring a full release for itself and Lotus but refusing to accept Plaintiffs' February 18, 2025 settlement offer, Kinsale clearly prioritized Lotus's interests over the interests of MMG to MMG's detriment. (DKT 15 ¶ 35). Kinsale's actions have already caused financial harm to MMG, including by forcing MMG to pursue substitute defense counsel. (*Id.* ¶ 59).

Therefore, the question before the Court is not whether a demand was unreasonably rejected but instead whether Kinsale "accorded the insured the same

20

faithful consideration it gives its own interest." *Holt*, 262 Ga. at 269. That inquiry — whether Kinsale favored itself and Lotus at MMG's expense — is inherently factual and cannot be resolved at this stage of litigation. *See id*. at 268–69; *Weeden*, 713 F. Supp. at 398 ("A judgment on the pleadings should not be granted if questions of fact remain to be decided.").

## B.   Kinsale's Proposed "Excess Judgment Rule" Misconstrues Georgia Law

Kinsale puts great emphasis on the purportedly "clear and well-settled" Georgia law that an excess judgment is required for pursuit of a bad faith claim. (DKT 46, at 17). For this proposition, Kinsale leans entirely on the Supreme Court of Georgia's conclusions in *Trinity Outdoor, LLC v. Cent. Mut. Ins. Co.*, 285 Ga. 583 (2009). In *Trinity Outdoor*, the Supreme Court of Georgia answered a certified question as to whether an excess judgment was a prerequisite for an action for negligent or bad faith failure to settle, doing so in the affirmative. *Id.* at 587.

In the classic "failure to settle" scenario addressed in *Trinity Outdoor*, an insurer unreasonably rejects a within-limits demand made against the insured and the insured then suffers an excess verdict. But the facts of *Trinity Outdoor* bear little resemblance here, where MMG's claims against Kinsale arise out of Kinsale working solely for Lotus's benefit while ignoring its independent duties to MMG. MMG's bad faith claim thus stems mainly from Kinsale's breach of its independent duty of equal consideration — a duty rooted in the insurer's control over the defense

21

and resolution of claims. *U.S. Fidelity*, 116 Ga. App. at 95. Because the duty of equal consideration is an obligation independent of the settlement-rejection framework, *Trinity Outdoor* does not govern MMG's claim.[2]

While an excess judgment is a common measure of damages in a failure-to-settle case, Georgia courts recognize more broadly that bad-faith damages are simply those proximately flowing from the breach and the extent of liability is generally for the jury. *See id.*; *Leader Nat'l Ins. Co. v. Kemp & Son, Inc.*, 259 Ga. 329, 330–31 (1989). Further, the Eleventh Circuit has expressly rejected the premise that Georgia law always requires an excess judgment. *Am. Guar. & Liab. Ins. Co. v. Liberty Surplus Ins. Corp.*, 835 F. App'x 447, 459 (11th Cir. 2020); *see also Am. Family Ins. Co. v. Abdulmohsen Almassud*, No. 1:16-CV-4023-RWS, 2021 U.S. Dist. LEXIS 260558, at *5 (N.D. Ga. May 17, 2021) ("This Court agrees that an excess judgment is not an *inherent* prerequisite for such a claim.") (emphasis in original).

Rather, as MMG's bad-faith claim "sounds in tort," *Canal Indem. Co. v. Greene*, 265 Ga. App. 67, 72 (2003), the relevant inquiry is whether Kinsale breached a duty of good faith and caused damages proximately flowing from that breach — not whether an excess judgment has been entered. *See Holt*, 262 Ga. at 268 ("An insurance company may be liable for *damages* to its insured" for negligently

---

[2] *Trinity Outdoor* recognized that bad faith claims are fact-dependent and that the outcome of such matters depend "upon the facts of th[e] case and the terms of the insurance policy in question." *Trinity Outdoor*, 285 Ga. at 587.

or in bad faith failing to settle a claim) (emphasis added). And MMG has alleged present, concrete damages proximately caused by Kinsale's bad-faith conduct. These damages are not speculative or contingent on a future judgment in the *Moore* suit; they are realized harms flowing directly from Kinsale's breach of its duties to MMG. MMG's damages include the following categories, each independently supporting the viability of MMG's bad faith claim without reference to an excess judgment.

First, and most significantly, MMG has suffered the loss of up to $3,000,000 in contractual coverage protection that should have been available to resolve MMG's exposure within Kinsale's limits. This is a completed economic harm, not a prospective one. The moment Kinsale settled for Lotus's benefit alone and exhausted both Policies, MMG lost the tangible contractual benefit of coverage to which it was entitled as an additional insured. *See St. Paul Fire & Marine Ins. Co.*, 2009 U.S. Dist. LEXIS 23663, at *23 ("[A]n additional insured is entitled to the same protection as a named insured"). This loss is not the speculative harm *Trinity Outdoor* contemplated—it is a vested benefit that Kinsale affirmatively destroyed by diverting the entirety of both Policies' limits to secure a settlement benefiting Lotus and Kinsale at the expense of MMG.

Second, MMG has incurred out-of-pocket attorneys' fees and costs to triage defense instability and protect itself from being left without funded counsel after Kinsale exhausted limits solely for Lotus. (DKT 15 ¶ 59). These are concrete,

quantifiable, already-incurred expenses that exist completely independently of any future judgment in the *Moore* suit. *See Gibson v. Preferred Risk Mut. Ins. Co.*, 216 Ga. App. 871, 871 (1995) (acknowledging an insurer cannot "abandon the defense of [a] claim in mid-course to the prejudice of the insured"). Had Kinsale not exhausted limits for Lotus alone, MMG would not have needed to undertake efforts to identify and retain substitute defense counsel. These defense-transition costs are independently compensable as consequential damages proximately caused by Kinsale's bad faith conduct and are recoverable under O.C.G.A. § 13-6-11 as litigation expenses necessitated by Kinsale's actions.

Third, MMG has suffered prejudice from the unapproved Consent Petition and court-approved settlement framework that preserved the Moore Plaintiffs' claims against MMG while fully releasing Kinsale and Lotus. (DKT 15 ¶¶ 54–55). Kinsale did not merely fail to protect MMG — it affirmatively created a settlement structure that worsened MMG's litigation position. The $3,000,000 payment to the Moore Plaintiffs effectively provided them with litigation funding to continue pursuing MMG, while the settlement's terms expressly preserved the *Moore* Plaintiffs' claims against MMG. Moreover, Kinsale-appointed counsel "consented" to this settlement on MMG's behalf without consulting MMG, MMG's coverage counsel, or the MMG Tower. (DKT 15 ¶¶ 53–55). The increased litigation exposure and settlement value of the Moore Plaintiffs' claims against MMG as a direct result

24

of this settlement structure is a quantifiable, present harm.[3]

Moreover, treating an excess judgment as an inherent prerequisite to a bad faith claim would invite absurd outcomes. Kinsale has exhausted the Policies, intends to withdraw MMG's defense, and will refuse to indemnify MMG. Thus, any judgment against MMG will necessarily be an "excess judgment" by default because there will be zero coverage available. Requiring MMG to first obtain an excess judgment would force it to litigate the *Moore* suit entirely at its own expense, obtain a judgment against itself, and only then pursue Kinsale for the very harm Kinsale caused — all while Kinsale benefits from the delay and MMG's depleted resources.

Adding to the absurdity, Kinsale's proposed excess judgment rule would force MMG to choose between settling the underlying claim with its own funds —thereby losing the right to pursue Kinsale — or risking trial and a judgment that, by Kinsale's own design, would be entirely uninsured. This Hobson's choice is precisely the type of prejudicial outcome that Georgia's duty of good faith is designed to prevent.

## CONCLUSION

For all the foregoing reasons, MMG respectfully requests that the Court deny Kinsale's Motion.

---

[3] Under *Four Season Trucking*, the absence of the insured's consent to a settlement depleting liability coverage is a critical factor in assessing prejudice. 2024 U.S. App. LEXIS 9093, at *6 (citing *Liberty Mut. Ins. Co.*, 219 Ga. at 9). Here, MMG neither consented to the settlement nor authorized any person to do so on its behalf.

26

Respectfully submitted this 30th day of April, 2026.

BARNES & THORNBURG LLP          O'DANIEL McDONALD, LLC


/s/Austin Bersinger (*with consent*)          /s/Graham E.McDonald
Austin Bersinger                              Graham E. McDonald
Georgia Bar No. 144792                        Georgia Bar No. 843090
3340 Peachtree Rd NE, Suite 2900              9040 Roswell Road, Suite 500
Atlanta, GA 30326-1092                        Atlanta, GA 30350-3939
(404) 264-4068                                (404) 419-6300
Austin.Bersinger@btlaw.com                    (404) 419-6301 fax
                                              gmcdonald@odmclaw.com

26

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type requirements of Local Rule 5.1, using 14-point Times New Roman font.

Respectfully submitted this 30th day of April, 2026.

<u>/s/ Graham E. McDonald</u>
Graham E. McDonald
Georgia Bar No. 843090

27

## CERTIFICATE OF SERVICE

The undersigned attorney does hereby certify that a true and correct copy of **DEFENDANT MMG MANAGEMENT, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** was duly served upon the following attorneys of record by the Court's CM/ECF filing system:

Brandon R. Gossett
James M. Bauer
William J. Keegan
Fields Howell LLP
665 8th Street NW
Atlanta, GA 30318
Attorneys for Kinsale Insurance Company

Ethan D. Kim
W. Calvin Smith, II, P.C.
3560 Lenox Rd. NE Suite 3020
Atlanta, GA 30326
Attorney for Betty Lester

Brian C. Mickelsen
Mickelsen Dalton, LLC
25 Society St
Charleston, SC 29401

Respectfully submitted this 30th day of April, 2026.

/s/Graham E. McDonald
Graham E. McDonald
Georgia Bar No. 843090

28